# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

DOMINIQUE L. JAMES,

    Plaintiff,

vs.                                        No. 15-cv-1039

A PLUS CARE SOLUTIONS,

    Defendant.

---

## ORDER DENYING
## DEFENDANT'S MOTION TO DISMISS
---

      Plaintiff, Dominique L. James, brought this action pursuant to Title VII of the Civil Rights Act, as amended, for damages against Defendant, A Plus Care Solutions ("A Plus"), based on alleged sexual harassment, hostile work environment, and retaliation. (Docket Entry ("D.E.") 1.) Before the Court is A Plus's motion to dismiss for failure to state a claim under Rule 12(b)(6), Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is DENIED.

*Factual Background*

      In September of 2010, James was hired by Defendant in the position of House Manager. (*Id.* at ¶ 9a.) Antonio White was a member of Defendant's management team. (*Id.* at ¶ 9b.) Beginning in December of 2013, White began sending James sexually explicit text messages and requesting sexual favors. (*Id.* at ¶¶ 9c, 9g, 9o.) White also noted numerous times that Plaintiff would ignore him and he would direct her to respond. (*Id.* at ¶¶ 9e, 9q, 9r.) He specifically

1

advised her that in order for her to change positions, James would need to comply with his sexual requests. (*Id.* at ¶¶ 9x, 9y.) On September 12, 2014, White called her and asked "why did she tell anyone that he has been asking her for sex." (*Id.* at ¶ 9cc.) On the same day, he also "told her over the telephone that he would fire her." (*Id.* at ¶ 9dd.) Four days later, on September 16, James was terminated. (*Id.* at ¶ 5.)

*Standard of Review*

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) instructs that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) requires that the Court "accept all material allegations as true and construe them in the light most favorable to the non-moving party." *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court delineated a two-prong test for analyzing 12(b)(6) motions. First, the reviewing court should consider what allegations are merely "legal conclusions" and disregard them when ruling on the motion. *Id.* at 678. Second, the court should evaluate the remaining well-pleaded facts and determine whether they give rise to a "plausible claim for relief." *Id.* at 679. "The plausibility standard is not akin

to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

"Pro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), *reh'g denied* (Jan. 19, 1990); *see also Song v. Gipson*, No. 09–5480, 2011 WL 1827441, at *4 (6th Cir. May 12, 2011); *Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)); *Payne v. Secretary of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming sua sponte dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"). Although Plaintiff later retained counsel, she filed her complaint pro se, and as such, it shall be construed liberally in her favor. *See Johnson v. Belvedere Gardens Condos. Ass'n, Inc.*, No. 12-2118, 2013 WL 4056356, at *4 (W.D. Tenn. Aug. 12, 2013); *Aladimi v. Alvis House Cope Ctr.*, No. 3:10cv00121, 2011 WL 3626414, at *1-3 (S.D. Ohio July 29, 2011).

*Analysis*

*(1) Timeliness of Complaint*

Section 2000e-5(f)(1) of Title 42 of the United States Code establishes that "[t]o pursue Title VII claims in federal court, a plaintiff must file a complaint within 90 days of receiving a right-to-sue ["RTS"] letter from the EEOC." *Hollimon v. Shelby Cnty. Gov't*, 325 F. App'x 406, 109 (6th Cir. 2009). Federal courts have strictly enforced this statutory limit. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984); *see also Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000). In interpreting precisely when the ninety days start, the Sixth Circuit has opined that "notice is *given*, and hence the [statute of] limitations term begins running, on the fifth day following the EEOC's mailing of an RTS notification to the claimant's record residential address, by virtue of the presumption of actual delivery and receipt within that five-day duration." *Graham-Humphreys*, 209 F.3d at 557.

In the instant matter, the RTS was issued by the EEOC on November 24, 2014. (D.E. 1 at ¶ 7.) Plaintiff filed her complaint on February 25, 2015, which was ninety-three days after the issuance. (D.E. 1.) A Plus asserts that November 24, 2014 is the day the ninety-day statute of limitations began to run, and thus James's filing was untimely. (D.E. 26-1 at 7.) Defendant's argument, however, is contrary to established Sixth Circuit precedent. *See Graham-Humphreys*, 209 F.3d at 557; *see also Fuller v. Michigan Dep't of Transp.*, 580 F. App'x 416, 424 (6th Cir. 2014). In accordance with case law, Plaintiff's statute of limitations began to run on November 29, 2014, five days after the RTS was issued. Thus, she had until February 27, 2015, to timely file suit. As James initiated her claim two days before the statute of limitations ran, her suit is timely. Accordingly, the Court DENIES Defendant's motion to dismiss on this ground.

### (2) Failure to State a Claim

#### (a) Quid Pro Quo Sexual Harassment

It is well-established law in the Sixth Circuit that Title VII provides relief for *quid pro quo* sexual harassment. *See Highlander v. K.F.C. Nat. Mgmt. Co.*, 805 F.2d 644, 648 (6th Cir. 1986). The Sixth Circuit has explained that

> [w]hat is commonly known as *quid pro quo* sexual harassment, to be contrasted with so-called hostile-work-environment sexual harassment, is anchored in an employer's sexually discriminatory behavior which compels an employee to elect between acceding to sexual demands and forfeiting job benefits, continued employment or promotion, or otherwise suffering tangible job detriments. To succeed, a plaintiff must prove, as relevant here, that he or she "was subjected to unwelcome[ ] sexual harassment in the form of sexual advances or requests for sexual favors" and that submitting to these demands or advances was an express or implied condition for receiving job benefits, or that refusing to submit resulted in a tangible job detriment.

*Souther v. Posen Constr., Inc.*, 523 F. App'x 352, 354 (6th Cir. 2013) (quoting *Highlander*, 805 F.3d at 648). Courts should "focus on the plaintiff's words, deeds, and deportment" when determining whether a co-worker's sexual advances or requests are unwelcome." *Id.*

In her complaint, James alleges that White began pressuring her for sex on December 19, 2013. (D.E. 1 at ¶ 9c.) White text messaged her numerous explicit messages, including asking her "why he hadn't gotten any sex from [her] yet" and "I want sex after church." (*Id.* at ¶¶ 9g, 9r.) He also told her not to ignore him and pointed out multiple times that she would not answer him or call him. (*Id.* at ¶¶ 9e, 9q, 9r.) At one point, James specifically asks White if she must perform sexual acts in order to "get moved" at work, to which he responded "yup" and "when you coming over." (*Id.* at ¶¶ 9x, 9y.) The text messages included in the complaint make it clear that White was sexually harassing her. Construing the allegations in light most favorable to James, the fact that she continually ignored White and would not respond to his sexually explicit communications demonstrate that the harassment was unwelcome. Further, White made his

sexual request an express condition for Plaintiff to receive a job benefit. As the Court finds that James adequately established a claim for *quid pro quo* sexual harassment, Defendant's motion to dismiss this claim is DENIED.

*(b) Hostile Work Environment*

The Sixth Circuit has delineated a four prong analysis to govern claims of sexual harassment based on hostile work environment. *See Gordon v. England*, 612 F. App'x 330, 335 (6th Cir. 2015); *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 271 (6th Cir 2009); *see also Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008).

> An employee establishes a hostile-work-environment claim by proving: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment based on her sex; (3) the harassment unreasonably interfered with her work performance and "created an objectively intimidating, hostile, or offensive work environment"; and (4) the employer is liable.

*Gordon*, 612 F. App'x at 335. "The harassment must meet both an objective and subject test, in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Grace*, 521 F.3d at 678. "The determination of whether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is not susceptible to a mathematically precise test." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008). The Supreme Court of the United States has established a non-exhaustive list of factors when determining whether a hostile work environment, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Sixth Circuit has "acknowledged that sexual comments and harassing acts of a continual nature are more likely to be deemed pervasive." *Hawkins*, 517 F.3d

at 333. Furthermore, "courts must determine whether the workplace is so permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Grace*, 521 F.3d at 678-79.

Taking the allegations as true, Plaintiff cites to numerous highly inappropriate sexual comments made by White. (*See* D.E. 1 at ¶¶ 9c, 9g, 9o.) These remarks included specifically advising James that she could not change her position at work unless she submitted to his sexual demands. *See Gordon*, 612 F. App'x at 335. Additionally, White continuously belittled her and threatened to fire her. (*See* D.E. 1 at ¶¶ 9cc, 9dd.) As pro se complaints must be construed broadly, Plaintiff has pleaded sufficient facts to entitle her to relief. Accordingly, Defendant's motion to dismiss this claim is DENIED.

### (c) Retaliation

It is well-established law that "Title VII makes it unlawful for an employer to retaliate against an employee because the employee engaged in conduct protected by Title VII." *Blackmon v. Eaton Corp.*, 587 F. App'x 925, 931 (6th Cir. 2014). "Protected activity refers to opposing any practice made unlawful under Title VII (discrimination based on sex, race, color, religion, or national origin), or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing pursuant to Title VII." *Gurish v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, No. 1:10CV02292, 2012 WL 3649359, at *1 (N.D. Ohio Aug. 23, 2012); *see Scott v. Potter*, 182 F. App'x 521, 524 (6th Cir. 2006). To establish a prima facie case for retaliation, a plaintiff must show that:

> [she] engaged in activity protected by Title VII; (2) [her] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.

*Blackmon*, 587 F. App'x at 931-32. The fourth component "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 932. "Temporal proximity can establish a causal connection between the protected activity and the unlawful employment action in the retaliation context." *Asmo v. Keane, Inc.*, 471 F.3d 588, 593-94 (6th Cir. 2006) (two months was sufficient to establish a link between the protected activity and termination of employment for purposes of a prima facie case). Once the prima facie case is established, the burden shifts to the defendant "to articulate a legitimate nonretaliatory reason for terminating [the] [p]laintiff." *Blackmon*, 587 F. App'x at 932; *see Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

In her complaint, Plaintiff alleges that on September 12, 2014, White, a member of Defendant's management team, called her and asked "why did she tell anyone that he has been asking her for sex." (D.E. 1 at ¶ 9cc.) On the same day, White also "told her over the telephone that he would fire her." (*Id.* at ¶ 9dd.) Four days later, on September 16, James was terminated. (*Id.* at ¶ 5.) Construing the complaint broadly and in the light most favorable to Plaintiff, she established that she engaged in the protected activity of reporting sexual discrimination, management personnel threatened to fire her, and then she was subsequently terminated within days of White confronting her regarding her disclosure. *See Blackmon*, 587 F. App'x at 931-32. The temporal proximity of merely four days between White confronting James and her termination is sufficient to establish link necessary for purposes of a prima facie case. *See Asmo*, 471 F.3d at 594. Thus, the burden shifts to Defendant to establish a legitimate, nonretaliatory reason for the termination. *See id.* at 932. Nowhere in Defendant's memorandum in support of its motion to dismiss does it articulate any basis for firing James. Accordingly, Defendant's motion to dismiss on this claim is DENIED.

*Conclusion*

For the reasons discussed herein, Defendant's motion to dismiss Plaintiff's claims is DENIED.

IT IS SO ORDERED this 14th day of March 2016.

                                                     s/ J. DANIEL BREEN
                                                     CHIEF UNITED STATES DISTRICT JUDGE